Good morning. If it pleases the Court, I'm Mary Lou Hilberg. I'm here for Mr. Gonzalez, and I'd like to reserve a couple minutes. Pull the mic down. I'm sorry? Pull the mic down. Thank you. You're welcome. Mr. Gonzalez is a 23-year-old farm worker who's never been in trouble before, gets very drunk, ends up with a shotgun, and there's a near tragedy in this case. But was there an intent to kill? There was not a tremendous amount of evidence on the intent to kill. The only real evidence, other than the crime itself, was the statement, it's a good day to kill, which could have been a good day to kill myself. It's un bien día para matar, un bien día para matarme. It's undisputed that Mr. Gonzalez, at the time of his testing, had a blood alcohol of nearly 0.20. He was extremely drunk. He urinated on himself in the patrol car. The other things he said were suicidal. They were, my life isn't worth anything, I don't care about living, et cetera. And primarily, he shot out the window in his own car, in the car he was riding in as a passenger. So there's, there's... But, I mean, the problem is all of this was argued to the jury. And, of course, you have the horribly aggravating fact that he fired a sawed-off shotgun into a vehicle occupied by three other people, including a 4-year-old and a 7-year-old, shattering the glass of their car and covering the victims with the glass. And that... I mean, are you arguing sufficiency of the evidence here? No. I'm arguing whether or not there was actually an intent to kill or whether this was gross negligence. It's clearly, at least, gross negligence. We're not saying it's anything but gross negligence. But was it gross negligence or an intent to kill was where the jury didn't have a choice. But, Your Honor, counsel, what gross negligence doesn't seem to cover the facts of this case. Now, this individual might have been so drunk that he didn't have the capacity to have the intent. But, certainly, it's not a situation where he's shooting at a target and he misfires. It's a terrible act. He said that the gun went off accidentally. That was his testimony. He said that... Four times. What? Four times. It was one shot. Well, but there were three, four expended shell casings found in the car. So this wasn't the first round that he fired. It was a shotgun. Yeah. And you got a racket after each shot. My understanding of the testimony and the evidence, and I could be wrong, Justice, is that there was one shot and it went everywhere. But there were other expended shell casings found on the floorboard of the car when he was arrested. Wasn't there one other car that was damaged? I don't believe so. There was another car that was a witness. But my understanding of the facts, and I'll take a second to look, is that there was one blast. To tell you the truth, I don't understand the mechanics of shotgun blasts enough other than to understand that they go all over the place and there's a whole lot of rubble.  I understand. Based on the physical evidence, I do, I am familiar with shotguns. And in reading the record, this was a pump-action shotgun, unlike an automatic shotgun, which simply requires pulling the trigger each time. This actually requires racking the shotgun, firing it, racking it again to expend the expended shell casing and put a live round into the chamber, firing again, racking it. That thing, we've got four expended shell casings. I don't remember that. It was not the first shot that he fired on Christmas Day. I don't remember that testimony from the trial transcripts, to tell you the truth. And after a while, the cases tend to blur. I understand. We have the same problem. I bet you do. And I hope I'm wrong, but I don't think I am. I'll take a quick look. And if I'm wrong, please let me know. I will. And I might also need to go back and look at the record and submit supplemental briefing if necessary. I'm sorry, but I don't remember that. The issue here really is whether or not, I see the issue anyway, is whether or not, if I'm correct on the evidence, is whether or not there is a due process violation when the jury has no place to go, but either guilty of attempted murder or not guilty when I admit that it's a horrendous crime when there's a woman and two children in the car. And asking the jury to ignore that is impossible. And it's clearly more than a simple shooting the gun off on New Year's Eve, you know, what we do. But the problem with the case for you is that the jury found him guilty. And the only issue really in my mind is whether he could form the intent to attempt murder because he was possibly so drunk that he couldn't have any intent to do anything. And that's a problem with California law. There's no lesser included to attempted murder under this situation, isn't it? So you're trying to box it into grossly negligent, and that doesn't fit either. So it's a very difficult case. It's a difficult case. The jury did decide that apparently that he had sufficient intent to be convicted of attempted murder. But they struggled with that in that they were out for a full day, they asked a written question about the effect of a .20 blood alcohol, and they weren't given any alternative other than guilty of attempted murder or not guilty. But that's an issue of California law, isn't it, as opposed to a basis for habeas. Well, what I'm arguing is that Matthews, which says that you have a right and Crane and all the clearly established federal laws, says you have a right to present a defense. And the right to present a defense is absolutely hollow if you don't have a right to have a jury instruction on it and have some place for the jury to go with that. Right. But you're asking for an instruction on a lesser related offense as opposed to a lesser included offense. So do you have a case, a federal case, that says a lesser related offense jury instruction is appropriate? Because that's why I think you have to have a federal case, a Supreme Court case that addresses a lesser related offense. Of course, we have them for lesser included offense, but if the Supreme Court hasn't addressed this point, don't you lose? Well, I would argue, I acknowledge that what the law is on lesser related. There's no sense in doing anything else. But I would argue that in this particular case, it's relatively novel because there is no lesser included, period. What do we do with the language of the Supreme Court in Hopkins, which basically says we consider whether Beck requires State trial courts to instruct juries on offenses that are not lesser related, offenses of the crime charged under State law. We conclude that such instructions are not constitutionally required. Because in Hopkins, there was a lesser included. And what I'm saying is when you reach this novel position where there is no lesser included and you have a competing balancing act of the right from Crane and Matthews to present a defense, what you've got to do is weigh and balance these rights. And here you've got a right to present a defense versus what? A gotcha? The realities of sentencing law in the State of California is that most people are either not innocent or guilty. They're guilty compared to what? How many enhancements? And here you've got 20 extra years tacked on because of that enhancement. I see my yellow lights up, so I'm going to save my time. Do you want to save a minute? Yes. Let's hear from the State. May it please the Court. Good morning, Your Honors. My name is Maggie Crell. I'm from the Attorney General's Office representing Respondent. I'd like to address any questions the Court has this morning, this afternoon. It's been a long day. Yeah. Well, I mean, I don't understand why Hopkins doesn't control here. This is not a situation where there is no Supreme Court authority on point, and therefore we couldn't say that however the California Court of Appeal resolved it, we can't say that it's unreasonable. We've got a Supreme Court case that says you're not entitled to a lesser related offense. That's right, Your Honor. I completely agree with that. And I think that Hopkins is completely controlling here. And as for the other issue that came up regarding the shotgun, there were four expended shells found at Mr. Gonzalez's feet when he was taken out of the vehicle. So there were four shots at least that were fired. It is possible, I suppose, for the judge to have said that on the facts of this case, there could be no intent and say that the jury didn't have evidence from which it could convict. That's very close, but the judge did not do that. And the jury apparently found that there was adequate intent to convict of attempted murder. That's correct, Your Honor. And the court did instruct, the trial court did instruct, obviously, that each element of attempted murder had to be proven beyond a reasonable doubt in what the specific intent meant. And it also instructed on involuntary or voluntary intoxication and on accident. So those defense concepts and those defense theories were covered by the instructions adequately. Thank you, Your Honors. I'd submit on the briefing. Counsel, you have one minute. Thank you. I think the Attorney General is correct that there may have been four shotgun shells in his car, but I also believe that the evidence from eyewitnesses, the victims, and the other car that was there was that there was one blast to the car with a woman and two children. I don't think anybody's suggesting otherwise. The problem, though, is that the jury heard that there were four expended shell casings. Right. There was a bag with 29 live rounds. Right. And he had a round, a live round in the chamber of the shotgun. So a reasonable inference would be that he was going around firing the shotgun at who knows what. Jackrabbits? You know, who knows what. Or humans in cars. Well, there's no evidence to show that it was a human. It was one car, three humans. Right. No question about that. But there was no evidence there was anything other than that. Counsel, tell us again how you think Hopkins is distinguishable from the facts of this case. Hopkins had a lesser included, so there was some place for the jury to go to. Here, you've got no place for the jury to go between guilty and not guilty. And I suggest that my constitutional law professor 30 years ago kept coming down to a balancing act, drawing a scale on the board, saying this is what it's really about. And I suggest to you that when you have Hopkins v. Matthews and you have something in between, that that's what this Court has to do, is a balancing act between the right to present a defense that means something, that gives the jury a real option, versus what? Gotcha? I get more years? I get an extra 20 years? No question, Mr. Gonzales, is guilty. But this is on EDPA review. I understand that, but the Constitution still applies. And there is clearly established. Was it objectively unreasonable? And if we accept your argument that Hopkins is not clearly established federal law that's applicable, then there is no other Supreme Court case that addresses this situation. So how can we declare the DCA to be objectively unreasonable? I think Matthews is clearly established. And I think Matthews controls that you have a right to present, you have a right to a jury instruction on the theory of defense. And that was the theory of the defense. He was too drunk, and it was an accident. Okay. Thank you very much. The case just argued is submitted, and we are adjourned until tomorrow.
judges: Fletcher B. , Tallman, Rawlinson